UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**No. 25-4011**

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

-v-

**JACK COPPENGER, JR.,**

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION
No. 5:12-cr-00278-1

APPELLANT'S BRIEF

Samantha M. Baker
313 Appeals, PLLC
Counsel for Appellant
500 Griswold St., Ste. 2450
Detroit, Michigan 48226
313.241.4298

TABLE OF CONTENTS

STATEMENT OF JURISDICTION....................................................................5
STATEMENT REGARDING ORAL ARGUMENT ........................................6
ISSUES PRESENTED ....................................................................................7
STATEMENT OF THE CASE ........................................................................8
SUMMARY OF THE ARGUMENT ..............................................................15
ARGUMENT...................................................................................................17

I. The special conditions of supervised release prohibiting Mr. Coppenger from possessing or using a computer or the internet, and requiring that he install monitoring software on his devices and consent to a baseless search of those devices is procedurally and substantively unreasonable......................................................................................17

a. Standard of Review ........................................................................17
b. The computer conditions are procedurally unreasonable where the district court gave no explanation for their imposition. ........................17
c. The computer conditions are substantively unreasonable because they are not reasonably related to the sentencing factors, they are unnecessarily restrictive, and they do not comply with the Sentencing Commission's policies. ......................................................................20

II. The special condition requiring Mr. Coppenger to submit to "at least monthly" polygraphs and face 36 months in prison for failure, is substantively unreasonable. ......................................................................25

a. Standard of Review ........................................................................25
b. The district court ordered at least monthly polygraph testing at Mr. Coppenger's expense with the consequence of a prison term for a failed test.........................................................................................................25
c. The polygraph condition, including its imposition, frequency, cost, and consequence are substantively unreasonable.................................26

III. The term of imprisonment and subsequent term of supervised release is substantively unreasonable. .........................................................30

d. Standard of Review ........................................................................30
e. The above-guideline sentence was substantively unreasonable for these Class C violations that did not involve criminal conduct. ...........31

CONCLUSION ....................................................................................................34
DESIGNATION OF DISTRICT COURT DOCUMENTS ................................35
CERTIFICATE OF COMPLIANCE....................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Gall v United States*, 552 U.S. 38 (2007) .... 32
*Holguin-Hernandez v. United States*, 589 U.S. 169 (2020) .... 31
*Rita v United States*, 551 U.S. 338 (2007) .... 19
*United States v. Barcus*, 892 F.3d 228 (6th Cir. 2018) .... 21, 27
*United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004) .... 17, 25
*United States v. Boucher*, 937 F.3d 702 (6th Cir. 2019) .... 32
*United States v. Brogdon*, 503 F.3d 555 (6th Cir. 2007) .... 27
*United States v. Cabrera*, 811 F.3d 801 (6th Cir. 2016) .... 19
*United States v. Carter*, 463 F.3d 526 (6th Cir. 2006) .... passim
*United States v. Coppenger*, 775 F.3d 799 (6th Cir. 2015) .... 8, 9, 11
*United States v. Dotson*, 715 F.3d 576 (6th Cir. 2013) .... passim
*United States v. Gardiner*, 463 F.3d 445 (6th Cir. 2006) .... 16
*United States v. Herrera-Zuniga*, 571 F.3d 568 (6th Cir. 2009) .... 31
*United States v. Hundley*, 625 F. App'x 274 (6th Cir. 2015) .... 24
*United States v. Inman*, 666 F.3d 1001 (6th Cir. 2012) .... passim
*United States v. Maxwell*, 483 F. App'x 233 (6th Cir. 2012) .... 18
*United States v. Morris*, 71 F.4th 475 (6th Cir. 2023) .... 33
*United States v. Nichols*, 802 F. App'x 172, 184 (6th Cir. 2020). .... 29
*United States v. Nunley*, 29 F.4th 824 (6th Cir. 2022) .... 30
*United States v. Pembrook*, 609 F.3d 381 (6th Cir. 2010) .... 17, 25
*United States v. Perazza-Mercado*, 553 F.3d 65 (1st Cir. 2009) .... 22
*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) .... 31, 32
*United States v. Price*, 901 F.3d 746 (6th Cir. 2018) .... 30
*United States v. Rayyan*, 885 F.3d 436 (6th Cir. 2018) .... 31
*United States v. Scheffer*, 523 U.S. 303 (1998) .... 16, 29
*United States v. Shaw*, 139 F.4th 548 (6th Cir. 2025) .... 26
*United States v. Swanberg*, 370 F.3d 622 (6th Cir. 2004) .... 24
*United States v. Trejo-Martinez*, 481 F.3d 409 (6th Cir. 2007) .... 18
*United States v. Wilson*, 172 F.3d 50 (6th Cir. 1998) .... 28

**Statutes**

18 U.S.C. §1030(e)(1) .... 22
18 U.S.C. §3553(a) .... 20, 31
18 U.S.C. §3553(c) .... 19
18 U.S.C. §3563(b) .... 20
18 U.S.C. §3583(d) .... 7, 16, 20, 26
28 U.S.C. §1291 .... 5

**Other Authorities**

U.S.S.G. §5D1.3 cmt. n. 3 .... 23
U.S.S.G. §5D1.3(b)(3)(G) .... 23, 29
USSG Ch. 7, Pt. A, intro. comment 3(b) .... 28

# STATEMENT OF JURISDICTION

On December 16, 2025, Mr. Coppenger admitted to committing six Grade C violations of his supervised release in the Northern District of Ohio. Judge John R. Adams revoked Mr. Coppenger's supervised release and imposed an above-guideline sentence which was to be followed by yet another term of supervised release. The district court also imposed unreasonable supervised release conditions including computer and internet bans without approval, computer monitoring software, baseless device searches, and monthly polygraph examinations. The district court exercised jurisdiction under 18 U.S.C. §3231 and entered the final order from which Mr. Coppenger now appeals. This Court has jurisdiction from all final judgments of the U.S. District Courts within the Sixth Circuit. 28 U.S.C. §1291. It also has jurisdiction over claims that a sentence was imposed in violation of the law or where the sentence is greater than the guideline range. 18 U.S.C. §3742(a)(1), (3).

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Coppenger requests oral argument. This Court has not yet considered whether a special condition of monthly polygraph testing, wholly unrelated to mental health treatment, is substantively reasonable where it does not relate to the sentencing factors and where failure of the examination will result in a supervised release violation. This Court has also not considered whether conditions typically reserved for sex offenders, such as computer and internet prohibitions, monitoring software, and polygraph testing is substantively reasonable for an offense that did not use a computer or the internet. Oral argument will significantly aid this Court in deciding this case.

## ISSUES PRESENTED

1. Are the special conditions prohibiting Mr. Coppenger from using a computer or the internet, and requiring him to submit his devices to an arbitrary search and computer monitoring software procedurally and substantively unreasonable where the district court gave no explanation for their imposition and the conditions do not comply with 18 U.S.C. §3583(d)?
2. Is the special condition requiring a defendant with no history of sex offenses to submit to "at least monthly" polygraph testing at the discretion of his probation officer, and face a prison sentence for test failure, substantively unreasonable where the condition does not comply with 18 U.S.C. §3583(d)?
3. Was a prison sentence that doubled the Guideline sentence, followed by a full-term of supervised release, substantively unreasonable where Mr. Coppenger only committed Class C violations?

## STATEMENT OF THE CASE

On June 28, 2012, Jack Coppenger, Jr., pled guilty as charged in a two-count information to offenses involving a mortgage fraud conspiracy that had concluded in early 2007. While Mr. Coppenger was on his second term of supervised release, he admitted to committing six violations and was sentenced to 18 months in prison and a new 30-month term of supervised release. This time, the district court imposed special supervised release conditions that are typically reserved for sex offenders, including a ban on computers and internet, the installation of monitoring software on all of his devices, and monthly polygraph examinations.

### I. The Conspiracy

Although this Court has prior history with this case, see *United States v. Coppenger*, 775 F.3d 799 (6th Cir. 2015), a brief recitation of facts is necessary to resolve this appeal regarding the most recent supervised release conditions.

In April 2005, Mr. Coppenger agreed to buy real estate in Panama City Florida for $13.2 million. (Plea, R. 7, 50). To finance the purchase, he conspired with three mortgage officers and 33 "straw buyers" to get mortgages for individual lots with the plan to eventually sell the property for profit. (*Id.*, 50-51, 53). In exchange for $25,000 cash or a share of the final sale profits, the straw buyers agreed to falsely indicate on the mortgage

applications that they intended to live on the property without any intention to do so. (*Id*. at 50-51). On the mortgage documents, the loan officers inflated the buyers' net worth and represented that the buyers had made down payments, though they had not. (*Id*.). The loan officers then mailed, faxed, or emailed the applications and documentation. (*Id*. at 55-56). Once the mortgages were approved, Mr. Coppenger received the money, and he or the loan officers made monthly mortgage payments on behalf of the straw buyers. (*Id*. at 51).

In May 2006, Mr. Coppenger's attorneys told him this scheme was illegal. In response, he stopped making payments and the mortgages defaulted. (*Id*. at 57). The next month, he contacted the FBI to confess and provided documentation of the offense to the government as part of his cooperation. (Sent'g Hr'g, R. 32, 215).

## II. The Proceedings

The government charged 35 coconspirators for their involvement in this mortgage fraud scheme. *Coppenger*, 775 F.3d at 801. All pled guilty and few received a prison sentence. *Id*. at 802. Mr. Coppenger was charged last in a two-count information with conspiracy to commit bank fraud and conspiracy to defraud the United States of taxable income. (Information, R. 1). At his arraignment on June 28, 2012, he pled guilty as charged. (R. 7).

Given Mr. Coppenger's lack of criminal history, immediate acceptance of responsibility, and assistance to the government, his guideline range was 78 to 97 months. (R. 32, 217-18). Still, District Court Judge John R. Adams sentenced him to 120 months on Count 1 and 60 months on Count 2, to be served concurrently. (Judgment, R. 27, 136). The upward variance was based on the judge's sympathy for the "law-abiding, decent" straw buyers, despite their voluntary, often paid, participation in the scheme. (R. 32, 231). The prison sentence was to be followed by a five-year term of supervised release for Count 1 and a three-year term for Count 2, to be served concurrently, with the following special conditions:

- Mr. Coppenger shall provide the probation officer access to all requested financial information.
- Mr. Coppenger shall not incur new credit charges or open new lines of credit without the probation officer's approval.
- Mr. Coppenger shall participate in an outpatient mental health treatment program as directed by the probation officer.
- Mr. Coppenger shall submit his person, residence, place of business, computer, and/or vehicle to a warrantless search conducted by the U.S. Pretrial Services and Probation Office at a reasonable time in a reasonable manner, with refusal being grounds for revocation.
- Mr. Coppenger shall apply all income tax refunds, lottery winnings, judgments, or other unexpected financial gains to his restitution.
- Mr. Coppenger shall fully cooperate with the IRS.

(R. 27, 137-38).

After finding that Judge Adams plainly erred in violating Rule 32(i)(1)(B) when he relied on the codefendants' presentence reports that were never disclosed to Mr. Coppenger in imposing the sentence, this Court vacated the sentence and remanded for resentencing. *Coppenger*, 775 F.3d at 807. Mr. Coppenger was resentenced to a term of 97 months with the same terms of supervised release and special conditions. (Amended Judgment, R. 51, 321-23).

On October 19, 2022, after serving nearly 37 months of his 60-month supervised release term, Mr. Coppenger was arrested for two supervised release violations. (Arrest Warrant, R. 81, 437; SRV Hr'g, R. 142, 676). The first violation alleged that Mr. Coppenger assisted family members in opening businesses in their names so he could engage in real estate activities within a few days of being told by his probation officer that he cannot engage in real estate for employment. (R. 142, 676-77). The second violation alleged that he falsely reported that he was employed by VanBaker Properties. (*Id*.). Both were Grade C violations, and the guideline range was 3 to 9 months. (*Id*.). The government moved to dismiss the second violation as part of a plea offer. (*Id*., 677-78). Judge Adams rejected that, stating, "I am sorry to be so blunt, but I know all about this defendant and I'm not going to condone or turn a blind eye to what may be violations." (*Id*., 679). Mr. Coppenger pled guilty to both violations. (*Id*.). Judge Adams again sympathized with the

coconspirators "who are all now convicted felons [and] whose lives have been altered forever because of Jack Coppenger." (*Id*., 682). Mr. Coppenger was held in custody for six months, but was release temporarily to assist the government in diverting a potentially violent crime. (SRV Hr'g, R. 148, 756; SRV Hr'g, R. 143, 691).

On June 15, 2023, both parties informed the district court of Mr. Coppenger's assistance to the government. (R. 143, 691, 696). Judge Adams minimized Mr. Coppenger's assistance and then lectured the government on how to conduct its investigation, specifically warning it against relying on Mr. Coppenger due to the judge's unfounded concerns about entrapment. (*Id*., 696-702). The government reiterated its position and asked that Mr. Coppenger be sentenced to time served, given that he had already served six months in jail for these violations. (*Id*., 702). The judge again sympathized with the mortgage fraud coconspirators before sentencing Mr. Coppenger to twelve months in prison plus another four-year term of supervised release. (*Id*., 705-709). The same special conditions applied, along with the following conditions that Mr. Coppenger:

- Must obtain and maintain verifiable W-2 or 1099 employment.
- Shall not engage in any real estate transactions or real estate related business, direct or indirectly, without approval from his probation officer.
- Shall allow a search of his storage unit.

- Must close multiple bank accounts so that only one remains in use and provide his probation officer with proof of closure.
- Shall obtain a mental health evaluation.

(Order, R. 95, 462-63; Order, R. 102, 473).

Mr. Coppenger's second stint of supervised release commenced on November 9, 2023. (Superseding SRV Report, R. 130, 625). Nearly two years into his four-year term of supervised release, he was arrested again for violations. (*Id*.) He was accused of (1) proposing a consulting agreement with a local real estate company without approval in December 2024, (2) signing a promissory note for $2 million without approval in August 2024, (3) serving as a real estate expert on a project between two entities by participating in calls and emails between August 2024 and April 2025, (4) buying a house in Akron in December 2024, (5) not telling his probation officer that he contacted police regarding a suspicious phone call he had received in October 2025, and (6) acting as a consultant by engaging in emails between two entities who planned to build a mental health facility in Colorado between March and July 2024. (*Id*., 626). Mr. Coppenger admitted to committing these Grade C violations. (SRV Hr'g, R. 145, 724-25). The guideline range was 3 to 9 months, but the probation department recommended 36 months. (*Id*., 725, 733).

On December 16, 2025, Judge Adams sentenced Mr. Coppenger to 18 months in prison followed by 30 months of supervised release. (*Id*., 733-34).

The same special conditions were imposed, along with the following conditions that Mr. Coppenger:

- Must not access the internet except for reasons approved in advance by the probation officer.
- Must not possess or use computers, other electronic communications or data storage devices without advanced approval from his probation officer.
- Must submit his computers or other electronic communications or data storage devices or media to a search.
- Must allow the probation officer to install computer monitoring software on any computer he uses and conduct unannounced searches of his computer to ensure compliance with that software.
- "Must submit to MONTHLY polygraph testing at the discretion of the probation officer as a means to ensure that [he is] in compliance with the requirements of [his] supervision or treatment program."

(Order, R. 132, 659-661) (emphasis in original). The written order following the hearing was in some ways inconsistent with the verbal order. First, the judge said that Mr. Coppenger "will be required to submit to these polygraphs *at least* monthly at the discretion of your probation officer," (R. 145, 736) (emphasis added), but the order only requires monthly testing. Judge Adams said "if [Mr. Coppenger] fails the polygraph, [he] will be back again, and mark it down, 36 months, three years is the statutory maximum…" (*Id*., 735), but the order says that violation proceedings cannot be based solely on polygraph results (R. 132, 660). Judge Adams told Mr.

Coppenger that the polygraphs were at his expense, though the order only requires that he pay for re-tests. (R. 145, 736; R. 132, 660).

## **SUMMARY OF THE ARGUMENT**

Mr. Coppenger's sentence and unnecessarily restrictive special conditions are unreasonable. For multiple Class C violations, none of which resulted in a criminal charge or even fraudulent conduct, the district court sent him back to prison for 18 months followed by the maximum amount of supervised release allowed. As part of his lengthy supervised release, the district court imposed conditions typically reserved for sex offenders with little to no explanation.

Mr. Coppenger challenges five special conditions related to electronic devices: (1) cannot access the internet without permission, (2) cannot use or possess computers or electronic communication devices without permission, and (3) must allow the probation officer to install computer monitoring software on any computer, (4) must allow the probation officer to search the computer to ensure compliance with the computer monitoring software, and (5) must allow the probation officer to search his devices for no reason at all. (R. 132, 659-660). These conditions, collectively referred to as the "computer conditions," are procedurally unreasonable because the district never said why it ordered them. *United States v. Inman*, 666 F.3d 1001, 1006 (6th Cir. 2012) (finding that a sentence is procedurally erroneous when

it is not adequately explained). They are substantively unreasonable because they have no relation to the sentencing factors, they are an undue restriction on his liberty, and they are not consistent with any Sentencing Commission policies. See 18 U.S.C. §3583(d).

Mr. Coppenger also challenges the required polygraph condition, which was not ordered as part of any mental health treatment but rather, "at least monthly" at the discretion of the probation officer. Although the reliability of polygraph testing "remains extremely polarized," *United States v. Gardiner*, 463 F.3d 445, 468-69 (6th Cir. 2006) (citing *United States v. Scheffer*, 523 U.S. 303, 309 (1998)), the court told Mr. Coppenger that if he fails, he will go back to prison for three years. Its rationale for this condition was because Mr. Coppenger was dishonest with his probation officer, but every supervised release violation inherently involves a breach of trust. Further, it is unreasonable for the failure of an unreliable test to result in a violation.

Finally, the length of the prison sentence and subsequent supervised release are substantively unreasonable for these Class C violations. The district court's primary reason for imposing the sentence was to protect the public from future crimes of the defendant, but he has not committed a crime in nearly 20 years.

## ARGUMENT

**I. The special conditions of supervised release prohibiting Mr. Coppenger from possessing or using a computer or the internet, requiring that he install monitoring software on his devices, and that he consent to a baseless search of those devices is procedurally and substantively unreasonable.**

**a. Standard of Review**

The imposition of a supervised-release condition is reviewed for abuse of discretion, considering both procedural and substantive reasonableness. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). Because defense counsel did not object to these special conditions, they are reviewed for plain error. *United States v. Bostic,* 371 F.3d 865, 872-73 (6th Cir. 2004). To establish plain error, Mr. Coppenger must show that (1) an error occurred, (2) the error was obvious or clear, (3) the error affected their substantial rights, and (4) this adversity seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Dotson*, 715 F.3d 576, 583 (6th Cir. 2013).

**b. The computer conditions are procedurally unreasonable where the district court gave no explanation for their imposition.**

The sentencing court must "adequately state[] in open court at the time of sentencing its rationale for mandating the special conditions." *Carter*, 463 F.3d at 529. Specifically, it must "explain[] its reasoning to a sufficient degree

to allow for meaningful appellate review." *United States v. Trejo-Martinez*, 481 F.3d 409, 412-13 (6th Cir. 2007). This Court has emphasized that "requiring the district court to adequately state on the record the rationale for the conditions selected aids in assuring that those chosen are applicable to that particular defendant and thus are more likely to encourage his rehabilitation." *Dotson,* 715 F.3d at 585. A sentence is procedurally erroneous when it is not adequately explained. *Inman*, 666 F.3d at 1006.

The district court provided no explanation for the computer conditions. It reviewed the violations along with an allegation that was not substantiated. (R. 145, 732-33). It explained his history of deception and how "what ends up transpiring is the probation officers who are tasked with supervising him have this enormous workload of trying to just keep track and try to steer him on the direct path." (*Id*. at 729-30). However, none of that had to do with the use of computers or the internet. This Court has held sentences to be procedurally erroneous when the district court stated that the conditions are "to protect the public from future crimes that might be committed," *United States v. Maxwell*, 483 F. App'x 233, 239 (6th Cir. 2012), or when the court merely expressed that it has "concerns about the case," even where some of the requirements imposed were reasonably related to the offense. *Dotson*, 715 F.3d at 586 (finding plain error where the district court failed to explain its reasoning for imposing a ban on pornography and a 20-

year ban on internet access for a defendant convicted of possession of child pornography). Here, the district court gave even less of an explanation for these conditions.

The district court's failure to articulate the reasons it imposed the computer conditions of supervised release is plain. *Dotson*, 715 F.3d at 589 citing *Inman*, 666 F.3d at 1006 (observing that "a sentence that is not adequately explained is procedurally erroneous"). It violated Mr. Coppenger's right to "meaningful appellate review by insufficiently explaining [its] reasons for selecting a given sentence," as well as his right to be sentenced in accordance with 18 U.S.C. §3553(c). *United States v. Cabrera*, 811 F.3d 801, 813 (6th Cir. 2016). This error also affected his substantial rights because, had the district court fully considered and explained its rationale on the record rather than reading a list presumably requested by the probation officer, less restrictive conditions may have been imposed. See *Dotson*, 715 F.3d at 589. The failure to comply with §3553(c) affects the fairness, integrity, or public reputation of the proceedings because "[c]onfidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Cabrera*, 811 F.3d at 814 citing *Rita v United States*, 551 U.S. 338, 356 (2007). Additionally, the imposition of conditions that are potentially more severe than what Mr.

Coppenger would have received had the district court followed the proper procedure affects the fairness, integrity, or public reputation of sentencing proceedings. *See Dotson*, 715 F.3d at 589.

**c. The computer conditions are substantively unreasonable because they are not reasonably related to the sentencing factors, they are unnecessarily restrictive, and they do not comply with the Sentencing Commission's policies.**

The district court can impose any special conditions outlined in 18 U.S.C. §3563(b) and any other condition it considers to be appropriate. 18 U.S.C. §3583(d). However, a special condition may only be imposed if it meets three requirements. *Carter*, 463 F.3d at 529-530. First, it must be "reasonably related to" specified sentencing factors. 18 U.S.C. §3583(d)(1). Those factors include the nature and circumstances of the offense and the defendant's history and characteristics, and the need for the sentence to provide adequate deterrence to criminal conduct, protect the public, and provide the defendant with needed rehabilitation. 18 U.S.C. §3553(a)(1) and (a)(2)(B)-(D). Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary" to provide adequate deterrence to criminal conduct, protect the public, and provide the defendant with needed rehabilitation. 18 U.S.C. §3583(d)(2); 18 U.S.C. §3553(a)(2)(B)-(D). Finally, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. §3583(d)(3). A condition must

satisfy all three requirements, but does not need to satisfy every factor or purpose within each of the first two requirements. *Carter*, 463 F.3d 529-530.

Mr. Coppenger committed mortgage fraud. The offense on its face could involve the criminal use of a computer, but the court must look at "whether the conditions bear a reasonable relationship to the instant offense." *United States v. Barcus*, 892 F.3d 228, 236 (6th Cir. 2018) (citation omitted). Mr. Coppenger's role in the conspiracy was agreeing to purchase the property and recruiting straw buyers to fund that purchase, while the co-conspiring mortgage officers submitted the fraudulent applications by mail, fax or email. (R. 7, 55-56). This ban on internet and computer use, therefore, does not reasonably relate to the offense. It also does not relate to Mr. Coppenger's history or characteristics. He has no criminal history besides these offenses and nothing in his personal history suggests that he has misused the internet or a computer. Only two of his six violations are alleged to have been committed through the internet, but neither violation involved fraudulent or criminal conduct. (R. 130, 627-29). These conditions do not promote the goals of public protection or deterrence because Mr. Coppenger has not used a computer to commit or even attempt to commit a crime. The only crimes he committed ended almost two decades ago and he even reported it to the government himself. See *Carter*, 463 F.3d at 532 (finding that a gap of 17 years between the prior sex offense and the

imposition of sex offender conditions was too remote). Rather than provide him with the needed rehabilitation, these unnecessarily restrictive conditions will only hinder his ability to re-enter society when he comes home.

A ban on the use of computers and the internet is an unreasonable deprivation of liberty for a defendant who has never used a computer to commit a crime. "An undue restriction on internet use renders modern life – in which, for example, the government strongly encourages taxpayers to file their returns electronically, where more and more commerce is conducted on-line, and where vast amounts of government information are communicated via website – exceptionally difficult." *Dotson,* 715 F.3d at 586-87 (quoting *United States v. Perazza-Mercado*, 553 F.3d 65, 71-74 (1st Cir. 2009)). Most cell phones are computers as defined in 18 U.S.C. §1030(e)(1). Watching shows or movies, or listening to music, often require use of the internet. Doctor appointments, therapy sessions, and prescription renewals are frequently done online. Finding a job often requires use of a computer and the internet, and most entry level jobs for which Mr. Coppenger may be eligible require use of a computer. Even with an exception for probation officer approval, these bans are far more restrictive than necessary. *Dotson*, 715 F.3d at 583, 587 (recommending that the district court reconsider a ban on internet access and use and possession of computers even when there is

an exception for probation approval). When Mr. Coppenger committed these violations, he was using the same email address that he gave the probation officer, and the probation officer already had the authority to search his computer. (R. 51, 137). Any concerns about his computer and internet use are sufficiently alleviated by that condition.

Similarly, a requirement that Mr. Coppenger install computer monitoring software and allow searches of his computer without even a reasonable suspicion is an excessive restriction of his liberty. There was already a search and seizure provision in place allowing the probation officer to warrantlessly search his computer upon reasonable suspicion. (R. 51, 323). Mr. Coppenger has committed no crimes since that condition was imposed, so expanding it to require computer monitoring software and baseless searches of his devices is too great of a restriction. This condition does not further the goals of deterrence, public protection, nor rehabilitation because he has not committed any crimes in nearly 20 years.

The computer conditions are not consistent with any of the Sentencing Commission's policy statements. The Sentencing Commission determined that conditions like these may be appropriate for individuals convicted of sex offenses. U.S.S.G. §5D1.3(b)(3)(G). Mortgage fraud is not defined by the Guidelines as a sex offense for purposes of supervised release. U.S.S.G. §5D1.3 cmt. n. 3. Mortgage fraud is no more sexual in nature than offenses

that this Court has concluded are not reasonably related to sex-offender conditions. *Carter*, 463 F.3d at 530 (finding that sex-offender conditions do not relate to the crime of felon-in-possession of a firearm); *United States v. Hundley*, 625 F. App'x 274, 277 (6th Cir. 2015) (finding that sex-offender conditions do not relate to the crimes of bank robbery and firearm offenses). The application notes state that the court "shall impose conditions of supervision not required by statute only to the extent that such conditions meet the requirements listed at 18 U.S.C. §3583(d)." §5D1.1 cmt. n. 1. These conditions do not meet those requirements. The district court did not cite any policy statements when it imposed these conditions but instead, listed off the conditions presumably requested by the probation officer. (R. 145, 734-38).

The district court's error in imposing these unnecessarily restrictive conditions was obvious because they do not comply with the very statute that authorizes the imposition of special conditions. This error affected Mr. Coppenger's substantial rights because it led to a more severe sentence than what would have been imposed had the district court followed 18 U.S.C. §3583(d). *Inman*, 666 F.3d at 1006 (citing *United States v. Swanberg*, 370 F.3d 622, 629-30 (6th Cir. 2004)). An error in sentencing that leads to a more severe sentence diminishes the integrity, public reputation, and fairness of the criminal sentencing system. *Inman*, 666 F.3d at 1006 (cleaned up).

## II. The special condition requiring Mr. Coppenger to submit to "at least monthly" polygraphs and face 36 months in prison for failure is substantively unreasonable.

### a. Standard of Review

The substantive reasonableness of a supervised release condition is reviewed for an abuse of discretion. *Carter*, 463 F.3d at 528. An abuse of discretion occurs when the district court applies the law improperly or uses an erroneous legal standard. *Pembrook*, 609 F.3d at 383. Because defense counsel did not object to these special conditions, they are reviewed for plain error. *Bostic,* 371 F.3d at 872-73. To establish plain error, Mr. Coppenger must show that (1) an error occurred, (2) the error was obvious or clear, (3) the error affected their substantial rights, and (4) this adversity seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Dotson*, 715 F.3d at 583.

### b. The district court ordered at least monthly polygraph testing at Mr. Coppenger's expense with the consequence of a prison term for a failed test.

The district court's verbal order to Mr. Coppenger regarding the polygraph condition conflicted with the written order after the hearing. The court told Mr. Coppenger that he "will submit to a polygraph examination monthly. Make it clear. Monthly. To be certain that you're not violating with the conditions here. If you fail the polygraph, you will be back again, and mark it down, 36 months, three years is the statutory maximum…" (R. 145,

735). It later stated that the polygraphs were "*at least* monthly at the discretion of [his] probation officer…" and that he "will be charged with those polygraphs based on [his] ability to pay." (*Id.*, 736). The order mandates that he "submit to MONTHLY polygraph testing at the discretion of the probation officer…" but that "no violation proceedings will be based solely on the results of a polygraph examination or a valid Fifth Amendment refusal to answer a polygraph question" and he is only required to pay for re-tests. (R. 132, 660).

This condition is undeniably mandatory, given the district court's emphasis on the testing frequency, but Mr. Coppenger's financial obligations and his consequences for failure are unclear. Because a defendant has a Fifth Amendment Due Process right to be present at sentencing, "the oral sentence controls when it conflicts with the written judgment." *United States v. Shaw*, 139 F.4th 548, 553 (6th Cir. 2025) (cleaned up). Therefore, the special condition is that Mr. Coppenger must take at least monthly polygraph conditions at his own expense and test failure will result in a violation.

**c. The polygraph condition, including its imposition, frequency, cost, and consequence are substantively unreasonable.**

Because this is a special condition, it must meet the requirements of 18 U.S.C. §3583(d). The district court can impose any special conditions it considers appropriate, so long as those conditions (1) are reasonably related

to the relevant sentencing factors and goals of 18 U.S.C. §3553(a), (2) "involve[] no greater deprivation of liberty than is reasonably necessary" to meet the sentencing goals in 18 U.S.C. §3553(a)(2)(B)-(D), and (3) are "consistent with any pertinent policy statements issued by the Sentencing Commission."

Polygraph testing is not reasonably related to the sentencing factors. It is rarely ordered as a standalone condition, but rather, as part of mental health or sex offender treatment condition requiring a defendant to "abide by the rules, requirements and conditions of the treatment program, including submitting to polygraph testing, to aid in the treatment and supervision process." *Carter*, 463 F.3d at 528. See also *Barcus*, 892 F.3d at 231 (special condition requiring the defendant to complete sex offender treatment and polygraph testing). This is true even when the offense was not a sex offense, but the offender had a prior history of sexual misconduct. *United States v. Brogdon*, 503 F.3d 555 (6th Cir. 2007). In an unpublished decision, this Court upheld a standalone polygraph testing condition because:

> The discretionary polygraphs…are tools to help the probation officer monitor defendant's rehabilitation and compliance with release conditions; the tests are not geared toward the collection of evidence for prosecution of possible future parole violations. The tests are not only reasonable but directly serve the penal system's twin goals of rehabilitation and protection of the public.

*United States v. Wilson*, 172 F.3d 50, *3 (6th Cir. 1998). Notably, Wilson was a sex offender.

Even if the court could order monthly polygraph testing as a standalone requirement for a defendant who has no history of sexual misconduct, it is substantively unreasonable here. The district court harped on Mr. Coppenger's dishonesty with his probation office, but any time a court is revoking supervised release for a violation, it is "[sanctioning] primarily the defendant's breach of trust." USSG Ch. 7, Pt. A, intro. comment 3(b). Therefore, every supervised release violation inherently involves dishonesty, but that does not make polygraph examinations appropriate. Monthly polygraphs are not the most effective means of providing Mr. Coppenger with rehabilitation, particularly when the frequency of polygraphs for sex offender treatment is once every six months.[1] The fact that test failure, as opposed to refusal to take the test, can result in another violation and a prison term sets Mr. Coppenger up for failure because polygraph tests are not reliable. Requiring him to pay for the examinations frustrates his ability to pay his restitution. It does nothing to protect the public from future crimes when Mr. Coppenger has not committed any

---

[1] Overview of Probation and Supervised Release Conditions, Administrative Office of the United States Courts at 87-89 (2024) available at https://www.uscourts.gov/sites/default/files/overview_of_probation_and_supervised_release_conditions_0.pdf

crimes – he merely violated an employment condition of his supervised release.

This condition imposes a greater deprivation of liberty than necessary while doing nothing to further the goals of sentencing. "[P]olygraph testing…implicates significant liberty interests." *United States v. Nichols*, 802 F. App'x 172, 184 (6th Cir. 2020). The testing is at the discretion of the probation officer with no connection to treatment. Perhaps the biggest issue is that Mr. Coppenger faces another prison term if he fails when "there is simply no consensus that polygraph evidence is reliable." *Scheffer*, 523 U.S. at 309. There are less restrictive means to ensure that Mr. Coppenger does not commit an employment violation. The probation department has the authority to search his home, vehicle, and computer, which would include his emails, and it can review his financial records, including any peer-to-peer transactions or bank records.

The district court did not articulate any Sentencing Commission policy that is consistent with the imposition of a standalone monthly polygraph condition for a person who has no history of sexual misconduct. The Sentencing Commission determined that conditions like these may be appropriate for individuals convicted of sex offenses. USSG §5D1.3(b)(3)(G). Like the computer conditions, this condition is inconsistent with the

Commission's directives because it does not comply with 18 U.S.C. §3583(d). §5D1.1 cmt. n. 1.

The district court's error in imposing the monthly polygraph condition was clear because it does not comply with 18 U.S.C. §3583(d). This error affected Mr. Coppenger's substantial rights because it is a more restrictive condition than what would have been imposed had the district court followed the statute. An error in sentencing that leads to a more severe sentence diminishes the integrity, public reputation, and fairness of the criminal sentencing system. *Inman*, 666 F.3d at 1006 (citations and quotations omitted).

## III. The term of imprisonment and subsequent term of supervised release is substantively unreasonable.

### d. Standard of Review

The reasonableness of a sentence following revocation of supervised release is reviewed for an abuse of discretion. *United States v. Price*, 901 F.3d 746, 749 (6th Cir. 2018). Claims of procedural error not raised in the district court are reviewed for plain error. *Id*. The substantive reasonableness of a sentence is reviewed for an abuse of discretion even if the defendant did not object below. *Id*. See also *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (substantive reasonableness arguments "do not need to be raised in the district court to be preserved for appeal").

### e. The above-guideline sentence was substantively unreasonable for these Class C violations.

The substantive reasonableness inquiry "asks whether the district judge 'abused his discretion in determining that the §3553(a) factors supported' the sentence imposed." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Holguin-Hernandez v. United States*, 589 U.S. 169, 173 (2020)). In reviewing the substantive reasonableness of a sentence, this Court looks at whether the district court placed "too much weight on some of the §3553(a) factors and too little on others" resulting in a sentence that is "too long (if a defendant appeals)." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A sentence may be substantively unreasonable when it is selected arbitrarily, based on impermissible factors, or when the district court gave an unreasonable amount of weight to any pertinent factor. is substantively unreasonable when the district court "failed to give reasonable weight to each relevant factor." *Perez-Rodriguez*, 960 F.3d at 754.

Under §3553(a), the Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in §3553(a)(2). A sentence within the Guidelines range is presumptively reasonable because "in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." *United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009) (cleaned up). However, when a sentence is outside the Guidelines

range, this Court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (quoting *Gall v United States*, 552 U.S. 38, 50 (2007)). In other words, "[t]he greater the variance, the more compelling the justification must be." *Perez-Rodriguez*, 960 F.3d at 754.

The district court focused heavily on Mr. Coppenger's dishonesty, gave a passing reference to his mental health issues, and considered little else beyond the conduct alleged by the probation officer. The district court gave no weight to Mr. Coppenger's post-sentencing rehabilitation. It was aware that he was participating actively in his mental health treatment and was in remission from his prior substance use disorders. (R. 130, 630). It knew that, despite his cooperation, he had served almost eight years in custody for the offense already, along with about five years on supervised release, both of which were significantly longer than any of his codefendants. Though he had been ordered to pay restitution at 10% of his gross monthly income, he was paying 18%. (*Id.*). Both the probation department and the government stated there were no criminal charges pending or forthcoming. (R. 145, 727-78).

The "most important[ ]" factor in the district court's decision to double the top of the Guidelines was to "protect the public from continued crimes

by this defendant." (R. 145, 737). Mr. Coppenger, however, has not committed any crimes since the mortgage fraud offense. The district court erred in placing so much weight on this factor when there was no evidence that Mr. Coppenger committed a crime, attempted to commit a crime, or even intended to commit a crime. The public does not need protection from someone whose last criminal act occurred nearly twenty years ago.

Finally, the district court did not explain how Mr. Coppenger's dishonesty here was "different from the typical or mine-run case that occupies the heartland to which the Commission intends individual Guidelines to apply." *United States v. Morris*, 71 F.4th 475, 484 (6th Cir. 2023). Every supervised release violation inherently involves dishonesty with the probation officer. These violations did not involve additional crimes, drugs or weapons, substance use, or refusal to participate in treatment. They were Grade C violations that did not warrant a prison sentence and an additional term of supervised release.

## CONCLUSION

For the reasons stated above, Mr. Coppenger respectfully requests that this Court vacate the sentence imposed by the district court.

Respectfully Submitted,

/s/Samantha M. Baker

Samantha M. Baker
313 Appeals, PLLC
Counsel for Jack Coppenger, Jr.
500 Griswold Street, Suite 2450
Detroit, Michigan 48226
313.241.4298

**DESIGNATION OF DISTRICT COURT DOCUMENTS**

Jack Coppenger, Jr. designates the following as relevant documents:

| **Record Number** | **Description** | **PageID** |
|---|---|---|
| 1 | Information | 1-17 |
| 7 | Plea Agreement | 36-67 |
| 27 | Judgment | 135-141 |
| 32 | Sentencing Hearing Transcript | 212-241 |
| 51 | Amended Judgment | 320-326 |
| 81 | Arrest Warrant | 437 |
| 95 | Order re SRV | 463-463 |
| 102 | Order Revoking Supervised Release | 473-474 |
| 124 | Supervised Release Violation Report | 606-613 |
| 128 | Arrest Warrant | 623 |
| 130 | Superseding SRV Report | 625-633 |
| 132 | Order Revoking Supervised Release | 656-661 |
| 142 | SRV Hearing Transcript 4/20/2023 | 673-686 |
| 143 | SRV Hearing Transcript 6/15/23 | 687-712 |
| 145 | SRV Hearing Transcript 12/16/25 | 721-739 |
| 148 | SRV Hearing Transcript 5/1/23 | 750-758 |

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains fewer than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The Brief contains 5,927 words.

Respectfully Submitted,

/s/Samantha M. Baker
Samantha M. Baker
313 Appeals, PLLC
Counsel for Jack Coppenger, Jr.
500 Griswold Street, Suite 2450
Detroit, Michigan 48226
313.241.4298

Dated: May 6, 2026